— **EXHIBIT  3** —

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK


CHRISTINA MELITO, CHRISTOPHER )
LEGG, ALISON PIERCE, and       )
WALTER WOOD, Individually      )
and on behalf of all others    )
similarly situated,            )
                               )
        Plaintiff(s),          )
                               )
vs.                            )NO. 1:14-cv-02440-VEC
                               )
AMERICAN EAGLE OUTFITTERS,     )
INC., a Delaware corporation, )
AEO MANAGEMENT CO., a Delaware)
corporation, and EXPERIAN      )
MARKETING SOLUTIONS, INC.,     )
                               )
        Defendant(s),          )



* * * * * * * * * * * * * * * * * * * * * * * *

DEPOSITION OF KARA BOWES

TAKEN ON BEHALF OF THE PLAINTIFFS/PUTATIVE CLASSES

IN OKLAHOMA CITY, OKLAHOMA

ON JUNE 14, 2017

* * * * * * * * * * * * * * * * * * * * * * * *




REPORTED BY:  JILL A. RESETAR, CSR

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 2

```
 1   APPEARANCES:
 2
     For the Objectors Kara Bowes and Brook Bowes:
 3
                   MR. ERIC ALAN ISAACSON
 4                 Attorney at Law
                   6580 Avenida Mirola
 5                 La Jolla, California  92037 6231
 6
     For the Plaintiffs and Putative Classes:
 7
                   MS. ADRIENNE McENTEE
 8                 Attorney at Law
                   936 N. 34th Street
 9                 Suite 300
                   Seattle, Washington  98103
10
     For the American Eagle Outfitters, Inc., and AEO
11   Management Company:
     (By Telephone)
12
                   MR. RICHARD T. VICTORIA
13                 Attorney at Law
                   707 Grant Street
14                 Suite 3800
                   Pittsburgh, Pennsylvania 15219
15
16
17
18
19
20
21
22
23
24
25
```

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 3

1   TABLE OF CONTENTS

2

    Stipulations . . . . . . . . . . . . . . . . . . .4

3

    Direct Examination By Ms. McEntee . . . . . . . .5

4

    Cross Examination By Mr. Victoria . . . . . . . 44

5

    Cross Examination By Mr. Isaacson . . . . . . . 47

6

    Jurat. . . . . . . . . . . . . . . . . . . . . .51

7

    Errata Sheet . . . . . . . . . . . . . . . . . .52

8

    Reporter's Certificate . . . . . . . . . . . . .53

9

10

        EXHIBITS

11

    (Exhibit Nos. 1 - 3 were previously marked in Brooke

12

    Bowes' deposition.)

13

    NO.        DESCRIPTION                      PAGE

14

    4          Agreement. . . . . . . . . . . . . . 42

15

    5          Text . . . . . . . . . . . . . . . . 47

16

    6          Text . . . . . . . . . . . . . . . . 47

17

18

19

20

21

22

23

24

25

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 4

1            S T I P U L A T I O N S

2

3              It is hereby stipulated that the

4    deposition of KARA BOWES may be taken pursuant to the

5    Federal Rules of Civil Procedure and pursuant to

6    Notice on June 14, 2017, before Jill A. Resetar,

7    Certified Shorthand Reporter within and for the State

8    of Oklahoma.

9              It is stipulated that all objections to

10   questions, except as to the form of the question and

11   the responsiveness of the answer, may be made at the

12   time of trial, when said deposition is offered into

13   evidence.

14

15

16

17

18

19

20

21

22

23

24

25

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 5

1                    KARA BOWES,

2    of lawful age, being first duly sworn, deposes and

3    says in reply to the questions propounded as

4    follows:

5                   * * * * * * *

6                 DIRECT EXAMINATION

7    BY MS. McENTEE:

8       Q.   Please state and spell your first name and

9    last name for the record.

10      A.   Kara Bowes.  And it's spelled K-a-r-a, last

11   name Bowes, B-o-w-e-s.

12      Q.   And during the course of this deposition,

13   may I call you both Kara or Ms. Bowes?

14      A.   Yes.

15      Q.   Okay.  Have you ever been deposed before?

16      A.   No.

17      Q.   I'm going to go through just some of the

18   basic rules for how the deposition should go, so you

19   understand.  It's important that you understand all

20   of my questions.  If at any time you don't

21   understand the question, will you ask me to clarify

22   it?

23      A.   Yes.

24      Q.   If you don't ask me to clarify the

25   question, I'm going to take it to mean you

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 6

1    understand the question, and that your answer

2    responds to that question.  Okay?

3         A.   Okay.

4         Q.   Because the court reporter is taking down

5    everything that we're saying, it's important that

6    you respond verbally with a "yes", "no" or some

7    other answer versus "uh-huh" or a non-verbal head

8    nod, something like that; do you understand?

9         A.   Yes.

10         Q.   It's also important that we not talk over

11    one another, which can be hard to do, because this

12    is so different than what normal conversation is

13    like.  But it's difficult for our court reporter to

14    write down what both of us is saying at the same

15    time; do you understand?

16         A.   Yes.

17         Q.   You can take a break at any time with one

18    exception, and that's if I have a question pending.

19    If I have a question pending, you have to answer

20    first before you take a break; do you understand?

21         A.   Yes.

22         Q.   And then, finally, have you taken any

23    medications or are you on any substances that would

24    prevent you from providing clear and accurate

25    testimony today?

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 7

1        A.    No.

2        Q.    Do you have any legal training?

3        A.    No.

4        Q.    We were kind of talking before the

5   deposition a little bit about development work, so

6   I'm curious about your line of business.

7        A.    It's real estate, I'm a realtor.  I am a

8   broker, but, obviously, I always say, "I'm not an

9   attorney, you have to seek legal advice," in my line

10  of work, so I've had no legal training.

11       Q.    Got it.  Is realtor and broker the same

12  thing in Oklahoma?

13       A.    Broker is, you can have real estate agents

14  under you, so it does take a little bit of extra

15  testing, classwise.  So I'm actually able to own and

16  operate my own office of real estate.

17       Q.    What's the name of your business?

18       A.    KBB Real Estate.

19       Q.    And do you have realtors underneath you?

20       A.    Currently one.

21       Q.    So in your line of business as a

22  realtor/broker, have you ever been in a position to

23  have to hire legal counsel to assist you in those

24  types of matters?

25       A.    Not yet.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 8

1      Q.   How long have you been doing this kind of
2   work?
3      A.   Almost 15 years.
4      Q.   You've been lucky then.
5      A.   (Nods head.)
6      Q.   Have you ever hired lawyers to assist you
7   in other types of matters?
8      A.   Just in that one Whirlpool case.
9      Q.   Okay.
10     A.   And a divorce, but it never went to --
11   further than -- what do you call it -- mediation.
12     Q.   Got it.  I'm going to ask you about the
13   Whirlpool case a little bit later, but I do know
14   about that one.
15          So other than the Whirlpool case and the
16   divorce, you haven't hired legal counsel?
17     A.   Correct.
18     Q.   And then just to clarify, Brooke Bowes is
19   your daughter; correct?
20     A.   Correct.
21     Q.   Are you familiar with the Telephone
22   Consumer Protection Act?
23     A.   Yes.
24     Q.   Tell me how you're familiar with it.
25     A.   Well, just being in business every day, I

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 9

1  buy cell phones.  In fact, I got in real estate

2  because I wanted a cell phone.  And, of course, I've

3  always treated it -- you know, I've always paid

4  attention to my kids, I've raised two kids, and I'd

5  give them the rights of phones, since they were

6  little, and educated them on phones and how to use

7  them properly.  So I kind of think it's an important

8  tool, yeah.

9      Q.    The cell phone is an important tool or the

10  Telephone Consumer Protection Act is an important

11  tool?

12     A.    Well, both are -- well, I don't know how to

13  answer that.  Clarify that.

14     Q.    I'm mostly trying to clarify what you said.

15  You said, I think it's an important tool, and I

16  wasn't sure what you were referring to.

17     A.    Well, the phones are.  But you have to know

18  what your rights are and not your rights are.  In my

19  business, I have a lot of people screen shot things.

20  There's just a lot of business that is carried on

21  through a cell phone.  And I am not -- this whole

22  thing is important to me because of the fact that

23  they send text messaging to -- you know, so it's

24  important to me.

25     Q.    When you say "the whole thing," you mean

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 10

1    this lawsuit?

2        A.    Yes.

3        Q.    I might refer to the Telephone Consumer

4    Protection Act as the TCPA, just to make it easier.

5    Do you understand what I mean when I say that?

6        A.    Yes.

7        Q.    Okay.  When did you first hear about the

8    TCPA?

9        A.    Well, when I read -- when I got on my claim

10   form sheet, and it said that it was about the -- you

11   know, my claim form that came in the mail, I was

12   reading it, and I was kind of confused, so I talked

13   to John, who is an attorney that I'm aware of, and

14   they're in business together.  John is a business

15   partner with me in real estate.

16       Q.    So when you got the notice about this

17   settlement and American Eagle, you talked to John?

18       A.    I called John.

19       Q.    And John who?

20       A.    Davis.

21       Q.    He's your business partner in what context?

22       A.    Real estate.

23       Q.    Is he one of the agents in your office?

24       A.    No.

25       Q.    Can you explain to me a little bit more

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 11

1   about what the nature of your business relationship

2   is with John Davis?

3       A.   We do -- he doesn't have a real estate

4   license here.  He has a real estate license.  He's a

5   broker in California, as well.  So we kind of -- we

6   have a business relationship in real estate.

7       Q.   Okay.

8       A.   Yeah.

9       Q.   Have you developed properties together?

10      A.   Not yet.

11      Q.   Okay.  Do you refer clients to one another?

12      A.   No.

13      Q.   Okay.  So what's the business relationship

14  that you have?

15      A.   I mean, we basically have formed an LLC to

16  do real estate in the future.  We aren't doing any

17  currently, right now.  But as a real estate broker,

18  I like to ask for his advice in law questions,

19  because it is business.  So that's -- you know, does

20  that make sense a little bit?  I just thought it

21  would be -- I mean, he doesn't have a broker's

22  license here.  But we thought about doing some work

23  in the future, so we did form an LLC.

24      Q.   Okay.  And the idea was that you would

25  possibly do future business together here in

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 12

1    Oklahoma?

2        A.   Yes.

3        Q.   And John Davis is a lawyer; is that right?

4        A.   Yes.

5        Q.   And how did you meet him?

6        A.   He was in town on business, and we met each

7    other just casually and have known each other now

8    for a few years.

9        Q.   Do you remember approximately the year that

10   you met him?

11       A.   2014.  It was through my divorce.  I got

12   divorced in 2014, so right around that time.

13       Q.   Okay.  And what were the circumstances of

14   you meeting him through your divorce?

15       A.   Just we were hanging out, and I was hanging

16   out with someone else that he knew.  So it was a

17   mutual friend type thing.

18       Q.   You met him socially?

19       A.   Yeah, socially.

20       Q.   Okay.  And what is the -- so he's a

21   business partner now?

22       A.   Uh-huh.

23       Q.   Has he ever been your lawyer?

24       A.   Other than the Whirlpool case, no.

25       Q.   Okay.  So he's not representing, for

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 13

1    example, with respect to this case?

2        A.   No.

3        Q.   And did you meet Mr. Isaacson through

4    Mr. Davis?

5        A.   Yes.

6        Q.   Okay.  I'll ask you more about that in a

7    little bit.

8            Coming back to the TCPA, I think I asked

9    you, when did you first hear about the TCPA.  And I

10   think you said it was through John Davis; is that

11   right?

12       A.   Well, I read it on the actual thing.

13       Q.   Okay.

14       A.   And I looked it up.  And I was like, "Oh."

15   And I -- you know, I get on the Do Not Call list and

16   that kind of stuff.  That's important to me.  I

17   don't want to be called all the time by people other

18   than people that want to do business with me.  So I

19   kind of educated myself a little bit, but I don't

20   pay attention to all the fine details.

21       Q.   Sure.

22       A.   And then I got this thing, and it was

23   American Eagle.  And it says "TCPA," and I was just

24   like, this is interesting.  I called John up, and I

25   said, John, you know, I have some issues with this.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 14

1    And he just said --

2                    MR. ISAACSON:  No.  I have to

3    object, attorney/client privilege.

4                    THE WITNESS:  Okay.

5                    MS. McENTEE:  Well, I think she

6    testified earlier that he's only represented her

7    with respect to Whirlpool, and that he's not

8    representing her on this case.

9                    MR. ISAACSON:  She testified that

10   he is not representing her in this case, that's

11   correct.  But she was calling him to get legal

12   advice, so it's a privileged communication.

13       Q.   (By Ms. McEntee)  Did you call him to get

14   legal advice?

15       A.   I did.

16       Q.   So he's both your lawyer and your business

17   partner?

18       A.   Well, on that thing -- I was getting legal

19   advice on this, because I got that claim form sheet.

20   And I was, like, interested in knowing more about

21   this.  And he said --

22                    MR. ISAACSON:  I have to object

23   and instruct you not to answer.  Your communications

24   with John about this case were seeking legal advice

25   that resulted in a referral to me, but the

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 15

1    communications are privileged.

2        Q.   (By Ms. McEntee)  I'm just trying to -- I

3    don't want you to tell me what he said, until we

4    sort out whether they were.  Okay?  But I'm trying

5    to understand the context, so don't tell me what he

6    said to you, let me just ask you a couple pointed

7    questions, and then maybe we'll move on from this.

8            But were you contacting him for the purpose

9    of seeking legal advice, or were you contacting him

10   as a friend and business partner to tell him about

11   receiving this notice in the American Eagle

12   settlement?

13       A.   Well, that I received this notice, and

14   that's it on client privilege, I guess.  You know,

15   that's all I contacted him for.

16       Q.   That's what I'm trying to find out.  Were

17   you asking him for his advice, legally, when you

18   contacted him?

19       A.   I got it.  I called him up, and he referred

20   me immediately to Eric, is what he did.

21       Q.   Okay.

22       A.   He didn't want to be involved in a legal

23   thing with me because of the Whirlpool case.

24       Q.   Okay.

25                   MS. McENTEE:  And I appreciate

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 16

1   your position, Mr. Isaacson, but I'm not -- I really

2   am not sure that -- it doesn't sound to me like she

3   was contacting him to be her lawyer.  And she's

4   testified that he only represented her with respect

5   to Whirlpool.

6                    MR. ISAACSON:  She testified that

7   she called him, because he was her lawyer in the

8   Whirlpool case, that he was a lawyer that she knows

9   through her business working, and that she called

10  him when she got a legal notice.

11                   THE WITNESS:  As a class member.

12      Q.   (By Ms. McEntee)  Okay.  He referred you to

13  Mr. Isaacson?

14      A.   Correct.

15      Q.   Okay.  And I assume you called Mr. Isaacson

16  at that point?

17      A.   Yes, I did.

18      Q.   All right.

19                   MR. ISAACSON:  I think I want to

20  move to strike the answer about the Whirlpool case.

21                   MS. McENTEE:  Let's be specific

22  about what you want to strike.

23                   MR. ISAACSON:  The statement about

24  John Davis saying something to her about the

25  Whirlpool case.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 17

1                    MS. MCENTEE:  Okay.  I'm fine with

2    that.  That's fine.

3        Q.   (By Ms. McEntee)  What is your

4    understanding, that you don't know the fine details,

5    because you've said that -- what is your

6    understanding of what the Telephone Consumer

7    Protection Act does?

8        A.   It protects people from spam text messages,

9    alerts.  And they shouldn't be utilizing my cell

10   phone to just spam me, period.

11       Q.   And perhaps specifically with advertising?

12       A.   Yes.

13       Q.   Before this case, did you ever receive

14   those types of texts to your cell phone from anybody

15   else?

16       A.   Possibly, yes.  Yeah, I'm sure I have.

17       Q.   Do you remember from whom?

18       A.   Could be from anything, Groupon, I don't

19   know.  I mean, not the -- I'm just trying to, you

20   know -- but I don't like them, it clogs up my cell

21   phone.  And all I want is my -- you know, I am in

22   business to get leads in real estate, and I want to

23   be able to see those.  I don't want a bunch of calls

24   that shouldn't call me and spam text messages that

25   shouldn't be spamming me.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 18

1       Q.   And understanding that you don't know all
2    the details about TCPA, when you got those prior
3    texts from Groupon or from whoever, did you think
4    that those were unlawful?
5       A.   I did not know that they were unlawful.  I
6    would always hit "stop."  When they started saying,
7    you can hit "stop," I realized something -- they
8    shouldn't be sending these to me.  And I would
9    always put "stop."  That's when it started hitting
10   me that maybe they shouldn't be doing this or they
11   wouldn't put on there you have a choice.
12      Q.   Sure.
13      A.   And that's when I really kind of started
14   thinking, oh, they probably shouldn't be doing this
15   to me.
16      Q.   And you became kind of aware of that idea
17   of "stop," indicating this is something that they
18   shouldn't be doing before the American Eagle case?
19      A.   Correct.
20      Q.   Prior to the American Eagle case, did you
21   ever follow through on that idea and reach out to
22   John, or any other lawyer, to figure out whether you
23   might have a claim against those companies like
24   Groupon or whoever it was?
25      A.   No.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 19

1      Q.   Why not?

2      A.   I just didn't think about it.  I figured no

3   one would listen to me maybe.

4      Q.   And do you understand that the TCPA can

5   also prohibit phone calls to your cell phone that

6   aren't texts?

7      A.   I thought maybe, that's why I brought that

8   up.

9      Q.   But you never pursued any potential --

10     A.   No.

11     Q.   -- claims based on those types of --

12     A.   No.

13     Q.   -- calls?

14          And I'm just going to remind us to try to

15   not talk over each other, because it's really hard

16   for her.  Again, it's totally different than regular

17   communication.  But it's just really important for

18   her to be able to get everything down.

19          So just so I'm clear, before the American

20   Eagle case, you were not involved in any sort of

21   case that asserted a violation of the TCPA?

22     A.   Correct.

23     Q.   How often do you shop at American Eagle?

24     A.   Not much now, but I did a lot, when the

25   kids were ages 14 to 17, because that's the age that

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 20

1    I feel they target.

2        Q.   And Brooke's 20, 21?

3        A.   Twenty, and my son is 18.  Probably last

4    Christmas bought my son some jeans there.  He buys

5    most of his jeans from American Eagle.

6        Q.   Okay.  When you were buying clothes for

7    your kids, did you ever take advantage of any of the

8    promotions?

9        A.   Yeah, I think I did.  But let me tell you,

10   a lot of times, I gave my kids money and let them

11   pick and choose and shop.  That's kind of how this

12   all -- that's why I immediately called Brooke.  A

13   lot of times, I'll say, "Here's a couple hundred

14   dollars, let's go shopping."  And she would shop and

15   pick and choose.  And I might be wandering another

16   part of the mall, come back.

17            And I have very strict rules with my kids

18   on their phones, because I've been paying for their

19   phones.  And one of them is -- was not to receive

20   text messaging.  In fact, the first thing she said

21   is, "Mom, I signed up, but I did 'no mobile

22   alerts'."  That's why this is kind of an important

23   case to me, because back in the day, they charged me

24   for any text messages that came through on their

25   phone.  And that's why I had rules in my house with

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 21

1    my kids.  And I'm not happy about it.

2        Q.   I understand.  I understand.

3             Were any of those shopping trips, where you

4    gave the kids money to go shop, ever in response to

5    you getting a promotion from American Eagle either

6    by text or by email?

7        A.   No, that didn't spur me to go shop.

8        Q.   Okay.

9        A.   It just annoyed the heck out of me.

10       Q.   You mentioned earlier that you would

11   occasionally text -- you learned that you could text

12   "stop" to Groupon or other companies, did you ever

13   text "stop" to American Eagle?

14       A.   I don't think so.  It was an odd time when

15   they started coming to me.  My kids were past the

16   age of 17, that I was even shopping.  I'm a pretty

17   busy person.  I get a ton of stuff.  And that takes

18   more time, and it's not making me money, it's

19   costing me time, so I don't think I ever did.  But I

20   will tell you, I probably deleted a lot of messages

21   from them.

22       Q.   We're going to take a look at just a couple

23   of exhibits.

24            This is Exhibit 1.  And that, if I am

25   correct, is your declaration that you submitted in

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 22

1   support of the objection to the American Eagle

2   settlement; is that's right?

3       A.   Uh-huh.

4       Q.   And we talked earlier about the Whirlpool

5   case.  Can you tell me what your involvement was

6   with the Whirlpool case?

7               MR. ISAACSON:  You can answer

8   without revealing any communications with your

9   lawyers.  Don't talk about anything that you said to

10  your lawyers or your lawyers said to you.

11              THE WITNESS:  I basically thought

12  I was a class member, because I bought a brand-new

13  home with a Whirlpool that broke down within the

14  first two or three years.  I replaced it with a

15  Bosch dishwasher.  And I was like, gosh, I thought I

16  bought a brand-new home and I wouldn't have a

17  problem with this.  Of course, I have a plumber in

18  hand, like I do every other handyman.  I called up

19  my plumber, he came and took a look.  I called my

20  other guy and said, "Deliver me a new dishwasher."

21  And that was the end of that.

22              And then, you know, I thought I

23  was a class member of it, and I wasn't.  I couldn't

24  find the receipt to say I was, when it came down to

25  it.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 23

1      Q.   (By Ms. McEntee)  So you thought you were a

2    class member, was that because you got a notice in

3    the mail?

4      A.   Really, I was talking -- I did get a notice

5    in the mail.  But I had purchased a home, and it was

6    in those years that they said they had problems --

7    problematic dishwashers.  I was just chit-catting

8    about my flips, and I was like, "Gosh, I bought this

9    new home," you know, just talking in general,

10   socializing.  And I thought I was a class member

11   from just my communications, socially.

12            And then I went looking for my receipt, and

13   I couldn't find it.  That's because I was moving,

14   and I had stuff in two different storage units and

15   moving my house.  I was like, I can't find the

16   receipt, so I can't even prove it, so I'm not even

17   going to mess with it.

18      Q.   So you learned that there was a case

19   against Whirlpool from social conversations with

20   other people?

21      A.   Uh-huh.

22      Q.   Did that include John Davis?

23      A.   Yeah.

24      Q.   And Mr. Davis represented you in that case;

25   correct?

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 24

1      A.    Yes.

2      Q.    And Mr. Isaacson also represented you?

3      A.    He was also on -- yeah, he was.

4      Q.    Okay.  Did you remember that because he was

5    nodding or because you just remembered it?

6      A.    No.  I know.  And Ben Nutley, too.

7      Q.    Okay.  I understand that you had a social

8    relationship with Mr. Davis, initially.  Did you

9    meet Mr. Isaacson before this case?

10     A.    On the phone we've talked.  I've never been

11   to San Diego.

12     Q.    Okay.  And have you ever met Mr. Nutley?

13     A.    No, face to face, I have not.

14     Q.    So you thought you might have been a class

15   member of the Whirlpool case, and you submitted a

16   claim on-line?

17     A.    Yes.

18     Q.    Okay.  And then I've read some of the

19   paperwork related to that.  And correct me if I'm

20   characterizing this wrong, but my understanding is,

21   because of how many years had passed, you didn't

22   have the paperwork to show that you had purchased

23   the Whirlpool product, and so because that was

24   required as part of the class settlement, you

25   withdrew your objection; is that right?

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 25

1      A.   Correct.

2      Q.   And as I also understand, you did not

3   receive any payment in connection with withdrawing

4   that objection?

5      A.   Correct.

6      Q.   And your attorneys also did not receive any

7   payment?

8      A.   Correct.

9      Q.   So turning back to this case and Exhibit 1,

10   which is right in front of you, your declaration, I

11   understand you knew that you were class member in

12   this case, because you got a notice in the mail; is

13   that right?

14     A.   Yes.

15     Q.   And that notice is what's attached there as

16   Exhibit A to Exhibit 1.

17     A.   Yes.

18     Q.   And the notice part is actually on the back

19   of that document.

20     A.   Yes.  That's what I read.

21     Q.   And so did you read that part, where it

22   says, "Why am I getting this notice"?

23     A.   Yeah, I did.  I read all of it, which I

24   need readers right now.

25     Q.   I know.  It's very small font.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 26

1       A.   It is.

2       Q.   Where it says, "Why am I getting this

3   notice," do you see where it says, "You were

4   identified as someone who may have received one of

5   these text messages based on AEO's records"?

6       A.   Yeah.

7       Q.   So you understood that you got this notice,

8   because you were on their list, basically?

9       A.   Yes.

10      Q.   And as I understand, your daughter, Brooke,

11  did not get a notice like this?

12      A.   Correct.

13      Q.   And have you since heard that she was not

14  on the list?

15      A.   No, I have not.

16      Q.   She was not on the list, I can represent to

17  you.

18           So I want to talk a little bit about your

19  declaration and your objection to the settlement

20  and, specifically, in paragraph 2.  And it's page 2

21  of the document.  There we go, paragraph 2 there.

22           It says, "I submit this declaration in

23  support of my objection to the proposed class action

24  settlement agreement, incentive awards and

25  attorney's fees."

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 27

1          And then it goes on to cite the case.  Do
2   you see that?
3       A.   Yes.
4       Q.   But then the rest the declaration doesn't
5   talk about the reasons why you object.  And so
6   that's what I want to talk about, is what some of
7   these reasons are.  So tell me, why don't you like
8   the settlement?
9       A.   Well, when I -- first of all, I feel that
10  you've got your plaintiffs that were given -- when I
11  got ahold of him, I read through.  They got $10,000.
12  And I have plenty of text messages.  And I'm a class
13  member, because they've let me know I'm a class
14  member.  Your attorneys are getting, like, I don't
15  know, $4.8 million dollars, which there's -- and
16  this big case, if I kind of went through the
17  whole -- as I was reading through our objection, I
18  realized how little the class members are getting.
19  The plaintiffs are getting $10,000.  And I might get
20  under $30, you know, depending.
21          And not all people are class -- I mean,
22  they have 618,000 class members or something, but
23  yet they missed people, because if they missed
24  Brooke, I'm thinking about how many more people they
25  missed.  And I think there's a lot of teenagers out

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 28

1    there that were missed.  And --

2        Q.   So I want to go back and ask -- well, I

3    didn't want to cut you off.

4        A.   You're fine.

5        Q.   I'm going to go back and break some of that

6    down.  You said, "I read through," but you didn't

7    say what you had read.  What did you read?

8        A.   First of all, I read the original -- if you

9    read here, it talks about the $14 million

10   settlement.  And I'm going to end up with a check

11   for under $30.

12       Q.   What are you looking at there?

13       A.   What does this -- "AEO has agreed to pay a

14   total of $14,500,000 into a Settlement Fund, which

15   will pay for the cost of notice administration of

16   this settlement."

17            So out of $14,500,000, I was like, okay.

18   You know, we may receive rewards of $142 to $285.

19   Well, I just think that, first of all, who's getting

20   all that money of the $14 million?  Well, probably

21   the attorneys are getting it.  And I was, like, why

22   are they getting so much?

23            Then these others -- I just didn't think

24   the numbers were adding up, to me.  And I actually

25   think it's being settled a little too low, because I

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 29

1    started doing the Telephone Credit Protection Act,

2    and each text should be about $500.  And I'm sitting

3    here thinking, I got a lot of texts that are coming

4    in to me.  And I'm only going to be settled for

5    fractions on the dollar, and these attorneys are

6    going to walk away with millions of dollars.  I

7    don't feel that they're doing the class justice.

8        Q.  So I see where you read about the

9    attorneys' fees and you read about the amount that

10   we're asking that the class representatives get,

11   which, by the way, they haven't got yet, the court

12   has to approve that.  Did you know that, that the

13   court has to approve it?

14       A.  Yeah.  I assumed it hadn't been finalized.

15       Q.  When you were reading through part of that

16   notice, you referenced that class members might get

17   a cash award of between $142 and $285.

18       A.  Uh-huh.

19       Q.  But then before that, a few minutes ago,

20   you said --

21       A.  Yeah, it was under $30.

22       Q.  So just let me finish, so the court

23   reporter can -- before that, you said, "Hey, and I

24   was reading I was going to get under $30."  So given

25   that you read what we put out there, which was $142

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 30

1    to $285, where did you come up with this notion that

2    you were going to get under $30?  And if the answer

3    is -- let me just say, if it's -- let me ask it

4    differently.

5           Did that notion, that you would end up with

6    under $30, come from any other source than your

7    attorneys?

8    A.   No.

9    Q.   So you did not get out the calculator --

10                MR. ISAACSON:  I have to object

11   that that reveals confidential communication with

12   her attorneys.

13                MS. McENTEE:  Objection noted, but

14   I think it's a proper question.  I'm entitled to

15   know why she believes she's going to get under $30.

16                MR. ISAACSON:  Well, a person can

17   do the math.  You can divide the $14.5 million by

18   600,000 --

19   Q.   (By Ms. McEntee)  Did you do the math to

20   determine that you were only going to get under $30?

21   A.   Well, I think you don't have all the class

22   members.

23   Q.   That's not my question.  And I don't mean

24   to be difficult, but I need you to answer that

25   question.  Did you get out a calculator and do math

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 31

1    that led you to believe that you were going to get

2    under $30 for your claim?

3        A.   I have talked to friends that say every

4    time they don't fill these out, these are just

5    regular social friends, they never get what they say

6    they're going to get.  That is something that a lot

7    of my friends say.  So they think I'm wasting my

8    time.  But I feel like I'm making a point to this

9    whole -- the reason I'm involved in this, there is a

10   point to be made here.

11       Q.   Did you use a calculator --

12       A.   I didn't use a calculator, per se, even

13   though I'm sitting here looking at these numbers and

14   thinking, something just doesn't seem to add up to

15   me.

16       Q.   So you don't know, as you sit here, how the

17   number of $30 came about?

18       A.   I just threw out that number.  I don't feel

19   that I will end up with $142.  And I don't know if

20   it says exactly to each text --

21            "Member who submits a valid claim form will

22   receive a cash award between $142" -- but still,

23   $142 to $285, this really should be a bigger case,

24   if you think about all the text messages that every

25   class member that's out there -- and we don't even

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 32

1    know who all the class members are.

2         Q.   Do you both list property -- do you

3    represent both buyers and sellers?

4         A.   Yes.

5         Q.   Do you get paid if a house doesn't sell?

6         A.   No, nothing.

7         Q.   Do you think that class action attorneys

8    get paid on every case that they take?

9         A.   Probably not.

10        Q.   If you don't win, you don't get attorney's

11   fees?

12        A.   Uh-huh.

13        Q.   Right?

14        A.   Yeah, probably.

15        Q.   So it's a little bit similar in terms of

16   risk.  And as I understand it, you are typically

17   paid, correct, based on a percentage of a price;

18   right?

19        A.   Uh-huh.

20        Q.   Do you understand that's kind of a similar

21   model to how class action attorneys make a living?

22        A.   Yeah.

23        Q.   Do you understand that people who assert

24   that they got texts from American Eagle, like

25   Brooke, but who were not on the list, have not given

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 33

1    up any right to be able to pursue American Eagle for

2    those texts?

3        A.    Well, that's why she got on-line and

4    submitted, because she's a class member.

5        Q.    But she's not a class member.

6                    MR. ISAACSON:  I object that that

7    is argumentative and a statement of -- without

8    foundation.

9                    MS. McENTEE:  Counsel, there's

10   lots of foundation for it.  And we'll be submitting

11   declarations to that effect.  And I've advised you

12   that Brooke is not a class member prior to these

13   depositions.

14                   MR. ISAACSON:  You have advised me

15   that Brooke is not on the list of approximately

16   618,200 and something members.  "Approximately"

17   means the number of people on the list is not

18   defining the class, which means that the list is not

19   defining the class.  The list is a description of

20   how many people are identified from the people who

21   are within the class, which then is, as I recall, in

22   the preliminary approval order and released to find

23   in terms of getting unconsented text messages.  And

24   I believe that Brooke is in the class of people who

25   got those unconsented text messages.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 34

 1                    MS. McENTEE:  Counsel, you're
 2   incorrect about your interpretation.  But we don't
 3   need to take up Ms. Bowes' time regarding incorrect
 4   understandings of the documents.
 5      Q.   (By Ms. McEntee)  Do you understand that
 6   only people, who have been deemed class members,
 7   give up their rights related to texts they may have
 8   received from American Eagle?
 9                    MR. ISAACSON:  I object to that
10   question as --
11                    MS. McENTEE:  Your objection is
12   noted, but I think we both need to stop with the
13   talking objections.
14                    Could you please repeat the
15   question to the witness?
16                    (Record read as requested.)
17                    MR. ISAACSON:  I object to the
18   question as assuming facts not in evidence.
19                    MS. McENTEE:  Objection is noted.
20                    Do you want to just read that
21   question again, so that she can --
22                    (Record read as requested.)
23                    THE WITNESS:  If you're a class
24   member, you're giving up your rights, is what you're
25   trying to ask me?  I've been deemed a class member.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 35

1    They're the only ones giving up their rights.

2        Q.   (By Ms. McEntee)  That's right.  And I'm

3    asking you if you understand that?

4        A.   I didn't until just now, you're trying to

5    tell me that.  But I wouldn't have -- I did not know

6    that until this moment.

7        Q.   I guess what I'm saying is, we have a

8    disagreement about whether Brooke is class member.

9    What I'm trying to say is, do you understand that if

10   she's not a class member, she can go and pursue

11   American Eagle if she wants to.

12       A.   If she wants to.

13       Q.   Do you understand that?

14       A.   I understand it now, I didn't before.

15       Q.   Did you, at any point, go onto the

16   settlement website and look at it?

17       A.   I may have, I don't recall.

18       Q.   Okay.  Do you recall -- if you did go on

19   there, do you recall seeing anything that

20   specifically said that the class involved in the

21   settlement was limited to a subset of people who got

22   texts from American Eagle?

23       A.   I don't remember that.

24       Q.   Are you specifically aware of any class

25   actions, in which class members got every single

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 36

1     dime of damages that they would be, perhaps,

2     entitled to if they sued individually?

3         A.   No.

4         Q.   So what's the basis of your complaint, for

5     lack of a better word, that class members should be

6     getting exactly $500 per text?

7         A.   Well, I think we should --

8                     MR. ISAACSON:  I object, that

9     mischaracterizes her testimony.

10        Q.   (By Ms. McEntee)  The other rule we didn't

11    go over, which I should have, is that from time to

12    time, your lawyer is going to object.  Unless he

13    instructs you not to answer, we give him a chance to

14    make the objection, and then you have to answer.

15    Sometimes, that disrupts the flow of remembering the

16    question, at which point, the court reporter can

17    read it back to you.  Okay?

18        A.   Okay.

19        Q.   Do you need us to read back that question?

20        A.   I'm afraid to answer it.  What was the

21    question?  Read it back.

22                     (Record read as requested.)

23                     THE WITNESS:  The basis of my

24    complaint is, first of all, the class

25    representatives are getting money that I'm not

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 37

1    getting.  And I'm a class member.  And I think the

2    attorneys could get more, because they are just

3    settling for too little on this basis.  But those

4    few class representatives, the plaintiffs, are

5    getting $10,000.  I should be in that same boat or

6    more, because I have a lot of text messages, and my

7    child does.

8        Q.   (By Ms. McEntee)  And how do you know we

9    could have gotten more?

10       A.   Well, this is a big company.  They made a

11   lot off me in the last -- and they make a lot of

12   money.  And I don't think this is just a tiny little

13   company.  When I got -- I was like, I've been buying

14   stuff there forever.  And I don't like that they

15   text message spam me all the time.  And it actually

16   got worse after my kids -- like I said, the time I

17   was -- originally.  If anything, I probably wanted

18   to purchase less from them.  But they -- $14 million

19   is nothing.

20       Q.   And so what facts are you basing your

21   statement on, your statement that we could have

22   gotten more from American Eagle?  What facts -- I

23   mean, I get that you're upset about it.

24       A.   I don't have any hard facts.

25       Q.   Okay.  And you got a bunch of texts.

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 38

1  Ballpark, how many did you get?

2      A.   Fifty, and that doesn't include, probably,

3  some that I deleted, or phone broken and had to

4  reboot it and that kind of thing.  I just -- you

5  know, it was interesting.  I saw it, I just put AEO,

6  because I was like, gosh, I think they've been

7  texting me.  And I looked, and there was, like, 50

8  of them.  I'm like, yeah, they were going crazy.

9      Q.   Do you understand that you could have opted

10 out of this settlement to pursue American Eagle

11 individually for those 50 texts?

12     A.   I did not know that.

13     Q.   Yeah.  So take a look at Exhibit 1 and

14 Exhibit A to that, which is that notice that we went

15 over before.

16     A.   Yes.

17     Q.   So do you see where it says, "Do I have to

18 be included in the settlement?"

19     A.   Okay.  That's about the fifth paragraph

20 down?

21     Q.   Yeah.

22     A.   "If you do not want monetary compensation

23 from this settlement and you want" --

24          I just thought I had to sign this in order

25 to even make a point to -- so that's really kind of

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 39

1  what I thought when I did that, to keep this --

2  "combined with AEO on your own, then you must

3  exclude yourself from the settlement by sending a

4  letter requesting exclusion for the claims

5  administrator by March 24th."

6          Yeah, I just thought that I had to send it

7  in.  And I didn't want to lose it for -- you know,

8  so I sent it in and --

9      Q.   But you agree that that language telling

10  you how to exclude yourself from the settlement was

11  here in the notice?

12      A.   Well, yeah, now I see it.  I mean, I kind

13  of glanced at it, and I didn't read it real

14  detailed.

15      Q.   Did you already have legal counsel before

16  you submitted your claim?

17      A.   No.

18      Q.   You hired legal counsel after you submitted

19  your claim?

20      A.   Yeah.

21      Q.   Why didn't you or your lawyers call class

22  counsel, meaning Beth Terrell, Keith Keogh, about

23  any of these questions you had about the settlement

24  before you filed your objection?

25                   MR. ISAACSON:  I object to the

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 40

1    question, to the extent it asks why her lawyers

2    didn't call on the ground that calls for attorney-

3    client communications.

4         Q.   (By Ms. McEntee)  Why didn't you call?

5         A.   I wouldn't know who to call.

6         Q.   Did you look into who to call?

7         A.   No.  It's like, I let my plumbers plumb, I

8    let my elections do electrician work, I let my

9    attorneys do attorney work, and I do real estate.

10   And so I just -- you know, that's how I look at it.

11   I wouldn't have even thought of looking into it.

12        Q.   Okay.  As part of your real estate

13   business, do you ever have a provider, like a

14   plumber and an electrician do an exceptional job for

15   you that results in you paying them something over

16   and beyond what you normally would as part of a

17   deal?

18        A.   Usually, the plumbers or electricians do

19   things for less, because they like working for me.

20   It usually goes the other for me, because I make

21   sure they're paid as soon as they do the job.  And

22   they like it.  Some people don't even pay their

23   bills.

24        Q.   Are you ever in a position to pay a stager

25   or anybody like that?

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 41

1      A.    Uh-huh, I do pay stagers.

2      Q.    Do you ever pay anybody a bonus, or

3    anything like that, for exceptional work?

4      A.    The only time is usually disclosed.  And

5    it's if I put a house on the market and I need to

6    sell it, I'll put a $1,000 bonus to -- if you bring

7    me an offer by July 15th, something like that.

8      Q.    So sort of like a disclosure that's on

9    Exhibit A, that says the plaintiffs -- we're going

10   to ask for $10,000 for the named plaintiffs, like

11   that kind of disclosure?

12     A.    Yeah.

13     Q.    So is it fair to say that you did not meet

14   Mr. Isaacson until you worked with him as part of

15   the Whirlpool case?

16     A.    Yes.

17     Q.    And you don't have a social relationship

18   with him at all?

19     A.    Huh-uh.

20     Q.    Is it also true that you were not

21   introduced to Mr. Nutley until the Whirlpool case?

22     A.    Correct.

23     Q.    Did your business relationship with

24   Mr. Davis exist before or after the Whirlpool case?

25     A.    Before.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 42

1      Q.   Do you know whether Mr. Isaacson has ever

2   agreed to withdraw an objection to a class action

3   settlement in exchange for payment of money?

4      A.   No.

5      Q.   No, you don't know?

6      A.   (Shakes head.)

7      Q.   Do you know whether Mr. Nutley has ever

8   offered to withdraw an objection to a class action

9   settlement in exchange for payment of money?

10      A.   No.

11      Q.   Do you know whether Mr. Isaacson has ever

12   agreed to dismiss an appeal of the approval of a

13   class action settlement in exchange for the payment

14   of money?

15      A.   No.

16      Q.   And do you know whether Mr. Nutley has ever

17   agreed to dismiss the appeal of the approval of a

18   class action settlement in exchange for the payment

19   of money?

20      A.   No.

21      Q.   I you understand that you signed an

22   engagement or retainer agreement with Mr. Isaacson.

23   We're going to mark that.

24            (Exhibit No. 4 marked

25             for identification and made a part of

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 43



1              the record.)

2      Q.   (By Ms. McEntee)  Is this your engagement

3   agreement, retainer agreement with Mr. Isaacson?

4      A.    Uh-huh.

19                                                    se

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 44

1      Q.    Have you ever submitted a claim in a class

2    action and not objected?  That would exclude

3    Whirlpool and this.

4      A.    No.

5      Q.    Have you ever received a notice of a class

6    action settlement other than this one?

7      A.    Not that I'm aware of.  Not that I recall.

8    I'm sure I have, but I didn't know what they were.

9    I mean, sometimes, I get ten things in the mail and

10   don't even pay attention to -- the only thing I pay

11   attention to is, is it a bill and do I have to pay

12   it?

13                  MS. McENTEE:  So what I would like

14   to do, if it's okay, is just take a quick break and

15   see if I've got other questions.  And if I don't, we

16   can turn it over to Mr. Victoria and Mr. Isaacson

17   and go from there.

18                  (Short break.)

19                  CROSS EXAMINATION

20   BY MR. VICTORIA:

21      Q.    Hi, Ms. Bowes.  I apologize for the awkward

22   asking questions over the telephone by someone

23   you've never met, but this is most convenient way to

24   do it sometimes.

25                  My name is Richard Victoria, and I'm one of

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 45

1    the lawyers for American Eagle Outfitters.  I just

2    want to ask you a couple of quick questions.

3              I believe you stated earlier that you don't

4    recall having ever sent a stop message in response

5    to any of the texts from American Eagle; is that

6    correct?

7        A.  I don't recall.  I do so many, so I could

8    have, I could have not.  I don't recall.

9        Q.  Okay.  Do you still receive messages from

10   American Eagle?

11       A.  No, I haven't.  It's funny, because I was

12   sitting here thinking, imagine if I just received

13   one right now, because you never know when they'll

14   start again.

15       Q.  Do you know when they stopped?

16       A.  Yeah.  I can actually look at my phone

17   right now and tell you when the last one was.  Hold

18   on, let me get my phone to stop rigging, and then

19   I'll tell you exactly.

20       Q.  You don't even have to give a precise date.

21   Was it before or after you filed your objection, if

22   you remember?

23       A.  I still got them after I filed my

24   objection, but not too many after that.  So it was

25   around -- hold on.  I'll put "AEO," and it will pull

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 46

1   up.  I want to say, it was -- hold on.  I want to

2   look, because now it's driving me crazy.

3           My phone gets locked up, because it has so

4   much junk on it.  I'm always trying to clear things

5   up.  That's why I would think that I try to delete

6   them.  But since I saw this, I kind of let them keep

7   coming.

8           Okay.  It came 4-2 of '17, 10:00 p.m.

9   April 2nd was my last one.  And it doesn't even give

10  me the option to say "stop," it just says, "Shop

11  now."

12     Q.   But that's the last one you got?

13     A.   That was the last one I got.

14     Q.   Okay.  So, then, it was before you filed

15  your objection?

16     A.   It was March, April.  Yeah, but I think I

17  had gotten the thing in the mail.  And then I didn't

18  have -- I mean, I think I sent in that objection in

19  May or March, April, somewhere.

20                 MR. VICTORIA:  Okay.  That's the

21  only question I have.

22                 THE WITNESS:  Okay.

23                 MR. VICTORIA:  Thank you.

24                 THE WITNESS:  Okay.

25                 Yeah, April 2nd, and that was sent

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 47

1    on April 23rd.  I think I received in the mail,

2    though.  What day did I receive that?

3                    MS. McENTEE:  Mr. Isaacson, do you

4    have any questions?

5                    MR. ISAACSON:  Yeah, just a few.

6                    I would like to mark two documents

7    as Exhibits 5 and 6.

8                    (Exhibit Nos. 5 and 6

9                    marked for identification and made

10                   a part of the record.)

11                   CROSS EXAMINATION

12   BY MR. ISAACSON:

13       Q.   Kara, I would like to ask, do you recognize

14   the two documents I put before you, marked Exhibits

15   5 and 6?

16       A.   Yeah.

17       Q.   Can you tell me what they are?

18       A.   Well, I called Brooke up when I got my

19   thing and said, "Brooke, did you send" -- which we

20   were talking about earlier -- "Brooke, have you been

21   getting mobile alerts from American Eagle?"

22            And she said, "Yes."  And she goes, "But,

23   mom, I told you, I turn off my mobile alerts."

24            And I said, "Okay."

25            So she immediately got on her computer,

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 48

1    logged into her rewards, which she had to go find

2    her password, because she doesn't ever log in.  But

3    she wanted to prove to me, because she knows how

4    upset I get, upset over this stuff.  I mean, I look

5    at it as, the kids are driving, they shouldn't be

6    texting, period, that kind of thing.  And so I was

7    making sure.  And she sent me a picture of her

8    screen shot, because she had turned off her mobile

9    alerts.

10          Then she sent me how many text messages --

11   she's like, I've got texts dated back to December

12   25, 2015.  And that's what she sent me.

13   Q.    Okay.  So she sent you a screen cap?  So

14   she sent you a screen cap of her account?

15   A.    Yeah.

16   Q.    And mobile alerts, it says she's selected

17   none?

18   A.    None, correct.

19   Q.    Okay.

20   A.    So then I couldn't yell at her.

21   Q.    I would like to ask you about your

22   Whirlpool washer.  Did you have any problems with

23   the Whirlpool washer?

24   A.    Yeah.  It didn't work, so I had to get rid

25   of it.  It just broke down.  And I had my plumber

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 49

1    come over.  And he said, yeah, these are a piece of

2    junk, basically.  So I ended up replacing it with a

3    Bosch.

4        Q.   And you bought it during the class period

5    that was relevant in the case?

6        A.   Yes.

7        Q.   And you believed yourself to be a class

8    member?

9        A.   Yes.

10       Q.   But when you went to retrieve documentation

11   from storage, you could not find it?

12       A.   Couldn't find it, yeah.

13                 MR. ISAACSON:  I have no further

14   questions.

15                 MS. McENTEE:  I don't either.

16                 Richard, do you have any more

17   questions?

18                 MR. VICTORIA:  No.  That's all.

19                 MS. McENTEE:  Okay.  Thank you

20   very much for your time.

21                 THE WITNESS:  Thanks.

22                 MS. McENTEE:  So what's normal, is

23   to take the deposition transcript and review it and

24   make any changes if mistakes were made.

25                 THE WITNESS:  Okay.

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 50

1                    MS. McENTEE:  So can we go ahead

2      and send that to your attorney, and he'll arrange to

3      send that to you?

4                    THE WITNESS:  Yes.

5                 (Deposition concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 51

1                              JURAT

2

3            I, KARA BOWES, do hereby state under oath

4      that I have read the above and foregoing deposition

5      in its entirety and that the same is a full, true

6      and correct transcription of my testimony so given

7      at said time and place, except for the corrections

8      noted.

9

10

                   _____

11                      KARA BOWES

12

13

        Subscribed and sworn to before me, a Notary

14     Public in and for the State of Oklahoma, by said

15     witness, KARA BOWES, on this _____ day of _____,

16     20__.

17

18                 _____

                   Notary Public

19

20                 My Commission Expires:_____

21

22

23

24

25

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 52

1                  ERRATA  SHEET
2    I, KARA BOWES, in Oklahoma City, Oklahoma, Oklahoma
3    County, Case No. 1:14-cv-02440-VEC desire to make
4    the following corrections:
5
     PAGE     LINE     CORRECTION
6
7    _____    _____    _____
8    _____    _____    _____
9    _____    _____    _____
10   _____    _____    _____
11   _____    _____    _____
12   _____    _____    _____
13   _____    _____    _____
14   _____    _____    _____
15   _____    _____    _____
16   _____    _____    _____
17   _____    _____    _____
18   _____    _____    _____
19   _____    _____    _____
20   _____    _____    _____
21   _____    _____    _____
22   _____    _____    _____
23
24            _____
                    KARA BOWES
25

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

616902d3-d753-45a9-9a1d-07123b05520c

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Kara Bowes

Page 53

1                   C E R T I F I C A T E

2

3

4    STATE OF OKLAHOMA )
                        ) SS:
5    COUNTY OF OKLAHOMA)

6

7            I, Jill A. Resetar, a certified shorthand

     reporter within and for the State of Oklahoma,
8
     certify that KARA BOWES was by me sworn to testify
9
     the truth; that the deposition was taken by me in
10
     stenotype and thereafter transcribed by computer and
11
     is a true and correct transcript of the testimony of
12
     the witness; that the deposition was taken on JUNE
13
     14, 2017, at 11:02 a.m., at 914 N. Broadway, Suite
14
     210, Oklahoma City, Oklahoma; that I am not an
15
     attorney for or a relative of either party, or
16
     otherwise interested in this action.
17
             Witness my hand and seal of office on the
18
     20th day of June 2017.
19

20

21                         _____
                           Jill A. Resetar, CSR
22                         for the State of Oklahoma
                           CSR # 01734
23

24

25

616902d3-d753-45a9-9a1d-07123b05520c