— **EXHIBIT 4** —

Case 1:15-cv-02370-VEC  Document 66-4  Filed 07/21/17  Page 2 of 43

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK


CHRISTINA MELITO, CHRISTOPHER )
LEGG, ALISON PIERCE, and      )
WALTER WOOD, Individually     )
and on behalf of all others   )
similarly situated,           )
                              )
        Plaintiff(s),         )
                              )
vs.                           )NO. 1:14-cv-02440-VEC
                              )
AMERICAN EAGLE OUTFITTERS,    )
INC., a Delaware corporation, )
AEO MANAGEMENT CO., a Delaware)
corporation, and EXPERIAN     )
MARKETING SOLUTIONS, INC.,    )
                              )
        Defendant(s),         )


        * * * * * * * * * * * * * * * * * * * * * * * *

                DEPOSITION OF BROOKE BOWES

    TAKEN ON BEHALF OF THE PLAINTIFFS/PUTATIVE CLASSES

                IN OKLAHOMA CITY, OKLAHOMA

                    ON JUNE 14, 2017

        * * * * * * * * * * * * * * * * * * * * * * * *




            REPORTED BY:  JILL A. RESETAR, CSR

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 2

```
 1   APPEARANCES:

 2


 3   For the Objectors Kara Bowes and Brooke Bowes:

 4              MR. ERIC ALAN ISAACSON
                Attorney at Law
 5              6580 Avenida Mirola
                La Jolla, California  92037 6231
 6

 7   For the Plaintiffs and Putative Classes:

 8              MS. ADRIENNE McENTEE
                Attorney at Law
 9              936 N. 34th Street
                Suite 300
10              Seattle, Washington  98103

11   For the American Eagle Outfitters, Inc., and AEO
     Management Company:
12   (By Telephone)

13              MR. RICHARD T. VICTORIA
                Attorney at Law
14              707 Grant Street
                Suite 3800
15              Pittsburgh, Pennsylvania  15219

16

17

18

19

20

21

22

23

24

25
```

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 3

1                    TABLE OF CONTENTS

2
    Stipulations . . . . . . . . . . . . . . . . . 4

3
    Direct Examination By Ms. McEntee. . . . . . . . 5

4
    Cross Examination By Mr. Isaacson. . . . . . . .33

5
    Further Direct Examination By Ms. McEntee. . . .37

6
    Jurat. . . . . . . . . . . . . . . . . . . . . .40

7
    Correction Sheet . . . . . . . . . . . . . . . .41

8
    Reporter's Certificate . . . . . . . . . . . . .42

9

10

                        EXHIBITS
11
    NO.      DESCRIPTION                      PAGE
12
    1        Declaration. . . . . . . . . . . .14
13
    2        Declaration. . . . . . . . . . . .17
14
    1        Agreement. . . . . . . . . . . . .27
15

16

17

18

19

20

21

22

23

24

25

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 4

1              S T I P U L A T I O N S

2

3              It is hereby stipulated that the

4     deposition of BROOKE BOWES may be taken pursuant to

5     the Federal Rules of Civil Procedure and pursuant to

6     Notice on June 14, 2017, before Jill A. Resetar,

7     Certified Shorthand Reporter within and for the

8     State of Oklahoma.

9              It is stipulated that all objections

10    to questions, except as to the form of the question

11    and the responsiveness of the answer, may be made at

12    the time of trial, when said deposition is offered

13    into evidence.

14

15

16

17

18

19

20

21

22

23

24

25

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 5

1                    BROOKE BOWES,

2     of lawful age, being first duly sworn, deposes and

3     says in reply to the questions propounded as

4     follows:

5                    * * * * * *

6                    DIRECT EXAMINATION

7     BY MS. McENTEE:

8         Q.    Please state your name for the record and

9     spell your first and last name.

10        A.    Brooke, B-r-o-o-k-e, Bowes, B-o-w-e-s.

11        Q.    And I'll probably alternate by calling you

12    Brooke and Ms. Bowes; is that okay?

13        A.    Yes.

14        Q.    Okay.  Have you ever been deposed before?

15        A.    No.

16        Q.    I'm going to go through a number of rules

17    with you, so that we can be clear about how this

18    should go.  It's important that you understand my

19    questions, so if at any time I've asked you a

20    question that doesn't make sense or that you need

21    clarity for, will you ask me to clarify?

22        A.    Yes.

23        Q.    If you don't ask me to clarify, I'm going

24    to assume that you understood the question and that

25    your answer is responsive to that question.  Okay?

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 6

1      A.   Okay.

2      Q.   The court reporter is taking down

3   everything that we say, so it's important, one, that

4   we answer verbally versus a nod or an "uh-huh," so

5   "yes" or "no" or some other sort of response is what

6   we want; do you understand that?

7      A.   Yes.

8      Q.   Okay.  And it's also important that we not

9   talk over one another, which is common in sort of

10  everyday conversation, because it's hard for her to

11  record what each of us is saying at the same time;

12  do you understand that?

13     A.   Yes.

14     Q.   You can take a break at any time with one

15  exception, and that's if I have a question pending.

16     A.   Okay.

17     Q.   Do you understand that?

18     A.   Yes.

19     Q.   Have you taken any medications or are you

20  on any other substances that would affect your

21  ability to give clear testimony today?

22     A.   No.

23     Q.   Do you have any legal training?

24     A.   No.

25     Q.   Are you in school?

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 7

1     A.   Yes.

2     Q.   Where are you in school?

3     A.   University of Central Oklahoma.

4     Q.   And what are you studying there?

5     A.   Nursing.

6     Q.   What year?

7     A.   I'm a junior.  I will be a senior in the

8  fall.

9     Q.   And do you expect to graduate after your

10  senior year?

11     A.   No.

12     Q.   How much further education do you intend to

13  complete?

14     A.   I will have two more years.

15     Q.   Have you ever hired legal counsel to assist

16  you with any type of matter?

17     A.   No.

18     Q.   When did you graduate from high school?

19     A.   2014.

20     Q.   What is your relationship with Kara Bowes?

21     A.   She is my mother.

22     Q.   Have you ever heard of the Telephone

23  Consumer Protection Act?

24     A.   Not before this case.

25     Q.   I'm going to probably refer to the

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 8

1    Telephone Consumer Protection Act as TCPA going

2    forward; is that okay?

3        A.   Yes.

4        Q.   When you say "not before this case," can

5    you put a date to when you first heard about the

6    TCPA?

7        A.   No.

8        Q.   Why are you unable to provide a date?

9        A.   I had just read about it.

10       Q.   Read about the TCPA or the case?

11       A.   The TCPA.

12       Q.   And you read about the TCPA in conjunction

13   with what?  Give me some context.

14       A.   This case.  I had looked into it.

15       Q.   So you looked into this case?

16       A.   The Telephone Consumer Protection Act.

17       Q.   And you can't give me any timing as to when

18   that occurred?

19       A.   No.

20       Q.   Do you remember when you indicated that you

21   thought you got texts in this case?

22       A.   I'm sorry, what was the question?

23       Q.   Well, it's hard for me to understand why

24   you don't know when you looked into TCPA, is it

25   within six months, a year, two years ago?

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 9

1      A.   No.  It was within six months.

2      Q.   Okay.  That's fine.  I don't expect you to

3  remember the day that you looked into the TCPA.

4      A.   Okay.

5      Q.   And what did you do to look into the TCPA?

6      A.   I Googled it.

7      Q.   So based on the research that you did into

8  the TCPA, what is your understanding of what the

9  TCPA does?

10     A.    It protects from getting spam messages.

11  You know, the average consumer being spammed by

12  businesses with text messages promoting their

13  business.

14     Q.    Before this case, did you ever receive

15  texts to your cell phone that you thought violated

16  the TCPA?

17     A.    From other companies?

18     Q.    Yes.

19     A.    No.

20     Q.    So you've never received spam text to your

21  phone?

22     A.    No.

23     Q.    Other than now?

24     A.    Correct.

25     Q.    What about telephone calls to your cell

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 10

1    phone that you didn't consent to, did you ever

2    receive anything like that prior to this case?

3         A.   No.

4         Q.   Did you consider filing your own lawsuit

5    against American Eagle?

6         A.   No.

7         Q.   Why not?

8         A.   I mean, it's not something that I would --

9    I don't know.  I didn't think that it was -- I don't

10   know how to put this.  Pretty much I heard about it

11   through my mother, so I wouldn't think to do it

12   myself, because I didn't know that it was an actual

13   case.  I didn't know -- I didn't know what was going

14   on, until I heard about it from her.

15        Q.   So can you just kind of go back and tell me

16   how that went, how you heard about the case and how

17   that conversation went and what happened next?

18        A.   So pretty much she had gotten a claim form

19   in the mail.  That was the only thing in the mail

20   that day.  And she had mentioned something to me

21   about, "Oh, claim forms," you know, and she got one

22   in the mail.  And so she was, like, "Hey, let's look

23   at this, I got a claim form, if you ever get one of

24   these, look into it."  And she was, like, "It's for

25   American Eagle.  I get texts from American Eagle, do

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 11

1    you get texts from American Eagle?"

2          And I was, like, "Actually, I do.  So that

3    was something I will look into."  When I looked into

4    it, I never got a claim form, but I looked into it,

5    saw on my rewards that I was not opted into text

6    messages, yeah, I continue to get them, so...

7          Q.   When you say "looked into it," what do you

8    mean?  What did you did to look into it?

9          A.   I had Googled it.  I had looked -- I think

10   I viewed an article, but I'm not sure.

11         Q.   So we talked earlier about you Googling the

12   TCPA, is that what you're referring to now, are you

13   talking about having Googled this specific lawsuit?

14         A.   Yes.

15         Q.   Yes, the TCPA or, yes, the specific

16   lawsuit?

17         A.   The specific lawsuit.

18         Q.   Okay.  So you remember maybe finding an

19   article about it and then what did you do?

20         A.   That was pretty much it.  I told my mom,

21   "Hey, I do get these text messages, I'm not opted

22   into them, so I think I would be a good candidate

23   for this case."

24         Q.   And what did you do to determine whether or

25   not you opted into the text or didn't opt in?

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 12

 1    A.   I wasn't -- it said, "Mobile alerts, none."

 2    Q.   And when you say "it," what are you

 3  referring to?

 4    A.   My American Eagle reward settings.

 5    Q.   So you have an account with American Eagle?

 6    A.   Correct.

 7    Q.   Okay.  And so do you regularly shop at

 8  American Eagle?

 9    A.   No.

10    Q.   But you have in the past?

11    A.   Yes.

12    Q.   Such that you created an account?

13    A.   Correct, yeah.

14    Q.   Do you know when you created that account?

15    A.   No.

16    Q.   And so just walk me through, to the degree

17  you can remember, because I know the website is not

18  open in front of you.  What did you do to go into

19  your account and determine that you weren't opted

20  in?

21    A.   I had to log in, which at this point, I

22  didn't even remember my log in information, because

23  I never log into it anymore, like, retrieve my

24  password, re-set it.  Once I logged in, I had to go

25  to the settings menu, and look at my account info,

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 13

1    and there it had my address and then "Mobile alerts,

2    none."

3        Q.   Okay.  And do you remember having chose

4    that  option "none" for your mobile alerts?

5        A.   I don't remember.

6        Q.   Okay.  And you assumed that whatever you

7    saw related to mobile alerts was therefore connected

8    with whatever texts you were receiving on your

9    phone?

10       A.   Correct.

11       Q.   So I don't think you answered my question,

12   but you might have, which was why didn't you

13   consider bringing your own lawsuit, and that may not

14   have been the actual question I asked, but that's my

15   question now.

16       A.   I did not realize that -- well, I knew that

17   I got texts from American Eagle, but I didn't know

18   that I had even a choice to opt out, so when I saw

19   that there is a Telephone Consumer Protection Act, I

20   was, like, well, that would make sense, and I logged

21   into mine, and realized that I was not supposed to

22   be getting those.

23       Q.   So I think you testified earlier you did

24   not get the postcard that your mom got?

25       A.   Correct.

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 14

1      Q.   And you also did not get an email, did you,
2  notifying you about the case?
3      A.   Not that I'm aware of.
4      Q.   And the only way you knew about this case
5  was from hearing about it from your mom?
6      A.   Correct.
7      Q.   Okay.  And just so I want to make sure that
8  we're talking about the same claim form, your mom's
9  claim form.
10              MS. McENTEE:  Could we mark this
11  as Exhibit 1?
12              (Exhibit No. 1 marked
13              for identification and made a part of
14              the record.)
15      Q.   (By Ms. McEntee)  So I've handed you what's
16  been marked as Exhibit 1.  And that, I believe, is
17  the declaration that your mom submitted in support
18  of the objection to the settlement in this case;
19  correct?
20      A.   Yes.
21      Q.   Take a look at Exhibit A to Exhibit 1.
22      A.   (Witness complies.)
23      Q.   Is that the claim form that your mom --
24  that you understand your mom submitted with the
25  notice on the back?

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 15

1      A.   Yes.

2      Q.   Okay.  Did you take a look at that notice

3   prior to submitting your own claim in this case?

4      A.   I submitted mine on-line.

5      Q.   What I'm asking is:  Did you read the

6   notice that's Exhibit A to Exhibit 1, before you

7   submitted your claim on-line?

8      A.   No.

9      Q.   So I'm looking at specifically the page 2

10  of Exhibit A, which is on the back, which is the

11  notice provision.  Do you see where it says, "Why am

12  I getting this notice?"

13     A.   Yes.

14     Q.   And do you see, also, where says, "You are

15  identified as someone who may have received one of

16  these text messages based on AEO records"?

17     A.   Yes.

18     Q.   You never got anything that told you that

19  you were identified as someone who may have received

20  one of these text messages based on AEO records;

21  right?

22     A.   No.

23     Q.   You talked about having submitted your

24  claim online, and so you did that via the specific

25  settlement website that was designated for this

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 16

1    case; is that right?

2         A.   Yes.

3         Q.   When you went to the settlement website,

4    did you look at the home page before you submitted

5    your claim to get information about what the

6    settlement was about?

7         A.   Yes.

8         Q.   Did you see on the home page an advisement

9    of sorts that said that the settlement class was

10   limited to a subset of approximately 618,289 people

11   that American Eagle had identified?

12        A.   Could you repeat that?

13        Q.   Sure.  When you went to the home page, did

14   you see a notice there that said that the settlement

15   class was limited to a subset of approximately

16   618,289 persons that American Eagle had identified?

17        A.   I don't remember.

18        Q.   Do you remember whether you reviewed any of

19   the documents that were on the website?

20        A.   I don't remember.

21        Q.   In case this jogs your memory, one of the

22   documents on the website was entitled "Class

23   Notice."

24        A.   Uh-huh.

25        Q.   And it also talks about the parameters of

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 17

1   who is and who isn't in the settlement class, do you

2   remember whether you read that?

3       A.   No.

4       Q.   Do you understand that individuals, who are

5   not on this list of 618,000, but who believe that

6   American Eagle sent them unlawful texts, are not

7   prohibited from pursuing their claims under the

8   settlement agreement?

9       A.   Would you, like, word that a little bit

10  differently?

11      Q.   Sure.

12           Do you understand that if you're not on the

13  list of 618,000 people, but you think that American

14  Eagle's texts were unlawful, that you were not

15  prohibited by the settlement from pursuing American

16  Eagle for those texts?

17      A.   Yes.

18      Q.   Do you understand that?

19      A.   Yes.

20           (Exhibit No. 2 marked

21           for identification and made a part of

22           the record.)

23      Q.   (By Ms. McEntee)  I'm handing you Exhibit

24  2.  And as I understand it, this is the declaration

25  that you submitted in support of the objection in

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 18

1    this case; is that right?

2        A.   Yes.

3        Q.   And as I understand Exhibit A to Exhibit 2,

4    is the receipt that you got from submitting your

5    online claim; is that correct?

6        A.   Yes.

7        Q.   Do you see the second line of the

8    certification language at the bottom, that says this

9    claim form may be researched and verified by

10   American Eagle Outfitters and the claims

11   administrator?

12       A.   Where?

13       Q.   Same page you were there.  Do you see where

14   it says "Claim Information, Certification" at the

15   bottom there?

16       A.   Yes.

17       Q.   In bold?

18            Do you see that part where it says, "This

19   claim form may be researched and verified by

20   American Eagle Outfitters and the claims

21   administrator"?

22       A.   Yes.

23       Q.   Did you ever contact the claims

24   administrator to determine whether you were on the

25   list of class members?

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 19

1     A.   No.

2     Q.   As far as you know, did your lawyer ever

3 contact the claims administrator to determine

4 whether you were on the list?

5     A.   Not that I know of.

6     Q.   Did you ever contact me or Keith Keogh or

7 Beth Terrell, who were the class counsel in this

8 case, to determine whether you were on the list of

9 class members?

10    A.   No.

11    Q.   As far as you know, did your lawyer ever

12 contact me or Beth Terrell or Keith Keogh to

13 determine whether you were on the list?

14    A.   Not that I know of.

15    Q.   Since filing your objection, have you

16 learned that neither your name nor your cell phone

17 number are on the list of class members who settled

18 their claims against American Eagle?

19    A.   No.

20    Q.   So I can represent to you that neither your

21 name or your cell phone number are on that list of

22 618,000 persons, and so given this information, why

23 do you believe you have standing to object to the

24 settlement?

25    A.   I get texts, I am not opted into them, I

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 20

1     feel I should be protected by the TCPA.

2         Q.    And you can do that by suing American Eagle

3     or pursing your claims in some other way; correct?

4         A.    Yes.

5         Q.    So do you understand that if you're not a

6     class member, you don't have to opt out, because

7     you're never in?

8         A.    Opt out of what?

9         Q.    The settlement.

10        A.    Okay.

11        Q.    If you're not part of the class, you don't

12    have to take any action to opt out, and you don't

13    have any standing to object; do you understand that?

14        A.    Okay.  Yes.

15        Q.    But understanding that, I don't agree that

16    you're in the class.  And I'm the one who settled

17    this case.  I want to go back and talk about your

18    declaration for a minute, and specifically paragraph

19    2.  And just on the second page there, where you

20    say, "I submit this declaration in support of my

21    objection to proposed class action settlement

22    agreement, incentive awards and attorneys' fees."

23         But there's nowhere else in this

24    declaration do I see the reasons why you're

25    objecting to these things.  And so I want to talk a

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 21

1    little bit about why you have a problem with the

2    settlement.  So tell me, what are the aspects of

3    this settlement that you disagree with?

4        A.    I saw that the class members, who received

5    the settlement, did not receive as much as they

6    should have for their damages.

7        Q.    Where did you see that?

8        A.    When I read it on-line.

9        Q.    Where?

10       A.    The time that I had Googled it.

11       Q.    So you're talking about the settlement

12   website?

13       A.    Yes.

14       Q.    What, specifically, did you read on the

15   settlement website that told you that the class

16   members did not receive as much as they should have?

17       A.    I had read they had settled for 14-some-

18   million.  And the class members, after all their

19   fees and everything, only received about $14 apiece.

20       Q.    And you say you read that on the settlement

21   website?

22       A.    Yes.

23       Q.    If I were to tell you that there was

24   nothing on the settlement website that would say

25   that settlement members were only getting $14

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 22

1    apiece, would you be able to tell me what other

2    source you went to, at which you saw some

3    representation that the settlement class members

4    were only getting $14 apiece?

5        A.   It was on-line.  I believe it was the

6    website.  But if you're saying that it's not, then

7    it must have been somewhere else.

8        Q.   Did you crunch any numbers or do any math

9    on your own to determine that the class members

10   would not be getting as much money as they should?

11       A.   I had also seen in the same article, in the

12   same place, that they should be -- you know, the

13   damages were $500 per text, up to $1,500.  And so if

14   someone had even at least three text messages, they

15   should at least receive $1,500.  And $14 is not near

16   that much.

17       Q.   Do you have any experience with class

18   actions prior to this one?

19       A.   No.

20       Q.   And so do you have sort of any baseline

21   understanding of what class members should or

22   shouldn't get, from a legal perspective, in a class

23   action?

24       A.   No.

25       Q.   I can represent to you that class counsel

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 23

1    provided an estimate in the class notice that,

2    depending on the claims rate, class members would

3    receive between $142 and $285 per class member.  Do

4    you recall seeing anything like that?

5         A.   No.

6         Q.   Do you understand what a claims rate is?

7         A.   No.

8         Q.   Other than what you read, what other basis

9    do you have, if any, to conclude that the class

10   members did not receive as much money as they should

11   have?

12        A.   I don't.

13        Q.   Do you understand that companies facing

14   multi-million or multi-billion dollar judgements

15   will sometimes choose to file for bankruptcy rather

16   than pay out class members?

17        A.   Yes.

18        Q.   Do you know what it means to be an

19   unsecured creditor?

20        A.   No.

21        Q.   Do you know that in the objection, that was

22   filed on your behalf, your attorney suggested that

23   if American Eagle were to declare bankruptcy, if you

24   were a class member, you would simply become one of

25   the new owners of the company?

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 24

1      A.    Yes.

2      Q.    You understand that a representation was

3  made?

4      A.    Yes.

5      Q.    And do you have any experience running a

6  multi-million or multi-billion dollar company?

7      A.    No.

8      Q.    Do you have any educational experience that

9  would give you the tools to do that?

10     A.    No.

11     Q.    Are you aware of any other class actions in

12 which the class members became the owners of the

13 company that opted to enter into bankruptcy?

14     A.    No.

15     Q.    So we've talked about one of the problems

16 you have with the settlement being that you don't

17 think the class members got as much as they should

18 have, are there are other concerns that you have

19 about the settlement?

20     A.    No.

21     Q.    Why didn't you call class counsel, and

22 that's me, Beth Terrell, Keith Keogh, with any

23 questions you had before you filed your objection?

24     A.    That was kind of my first step was to talk

25 to my attorney.

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 25

1     Q.   Do you know why your attorney didn't call
2  me or Beth Terrell or Keith Keogh with any
3  questions?
4     A.   I do not.
5     Q.   And if I understand correctly, you have not
6  ever filed an objection to another class action
7  before; is that correct?
8     A.   Correct.
9     Q.   Okay.  You said a minute ago that your
10  first step was to call your attorney, and is that
11  Mr. Isaacson, who's here today?
12     A.   Yes.
13     Q.   How long have you known Mr. Isaacson?
14     A.   I can't give you an exact date, but
15  whenever I started this case.
16     Q.   So you had not met Mr. Isaacson before you
17  learned about this case?
18     A.   No.
19     Q.   And did you contact him about this case, or
20  did he contact you?
21     A.   Yes, I called him.
22     Q.   How did you learn about him?
23     A.   My mother.
24     Q.   And that's because your mother had hired
25  him in another case?

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 26

1          A.    I don't know.

2          Q.    So you don't know what the relationship is

3     between Mr. Isaacson and your mother?

4          A.    He is also her attorney.

5          Q.    Do you have any social relationship with

6     Mr. Isaacson, other than him being your attorney?

7          A.    No.

8          Q.    Do you know whether your mother has any

9     social relationship with Mr. Isaacson?

10         A.    No.

11         Q.    No, you don't know, or, no, they don't?

12         A.    No, she does not.

13         Q.    An attorney named Benjamin Nutley has also

14    appeared as your attorney in this case, how long

15    have you known him?

16         A.    Since the case started.

17         Q.    So you never met Mr. Nutley prior to this

18    case?

19         A.    No.

20         Q.    Is it your understanding that your mom also

21    hired Mr. Nutley previously as her counsel?

22         A.    Correct.

23         Q.    Are you aware of any other relationship

24    between your mother and Mr. Nutley, other than him

25    having previously represented her?

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 27

1      A.   No.

2      Q.   Do you know whether Mr. Isaacson has ever

3  agreed to withdraw an objection to a class action

4  settlement in exchange for payment of money?

5      A.   I do not know.

6      Q.   Do you know whether Mr. Nutley has ever

7  offered to withdraw an objection to a class action

8  settlement in exchange for the payment of money?

9      A.   I do not know.

10      Q.   Do you know whether Mr. Isaacson has ever

11  agreed to dismiss the appeal of the approval of a

12  class action settlement in exchange for the payment

13  of money?

14      A.   I do not know.

15      Q.   Do you know whether Mr. Nutley has ever

16  agreed to dismiss the appeal of the approval of a

17  class action settlement in exchange for the payment

18  of money?

19      A.   I do not know.

20      Q.   So before we started today, Mr. Isaacson

21  produced, on your behalf, an attorney retainer

22  agreement between you and Mr. Isaacson.

23           MS. McENTEE:  Could we mark this

24  as an exhibit, please?

25           (Exhibit No. 3 marked

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 28

1                     for identification and made a part

2                     of the record.)

3                     MR. VICTORIA:  Adrienne?

4                     MS. McENTEE:  Yes.

5                     MR. VICTORIA:  Just so it's on the

6     record, I'm going to request that we get copies of

7     whatever was produced today.  I assume you were

8     going to give those to us anyway.

9                     MS. McENTEE:  Yeah.  I only have

10    the one, but I'm sure we can figure out how to get a

11    copy here today.

12                    MR. VICTORIA:  Obviously, I don't

13    need it right now, but after the deposition, if you

14    guys can get us copies in some way, I'd appreciate

15    it.

16                    MS. McENTEE:  Of course.  And

17    actually, you know, Rich, we might be able to pause

18    and make copies and figure out a way to scan it to

19    you, if that makes sense.

20                    MR. VICTORIA:  I don't think

21    there's an issue right now.  If, as it progresses, I

22    get more curious or think that I need to ask some

23    questions about it, I will.  But as it stands, I

24    think you guys can just proceed.  I don't want to

25    hold things up.

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes



Page 29

1            MS. McENTEE:  Okay.  Thank you.

2            MR. VICTORIA:  Thanks.

3      Q.   (By Ms. McEntee) So I'm going to show this

4  to you and have you just identify that, if you will,

5  as being the agreement that you have with

6  Mr. Isaacson as, "yes" or "no," is that the

7  agreement?

8            MR. ISAACSON:  If it would help

9  you, I do have another copy of it.

10            MS. McENTEE:  Great.  Thank you.

11            THE WITNESS:  Yes.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes



Page 30

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 31

1    █  ███████████████████████

2    ███████████████████████████

3    █████████████████████

4    █  ██████

5        Q.   Did you also sign an agreement like this --

6    similar to this with Mr. Nutley?

7        A.   Not that I know of.

8        Q.   Okay.  Have you met Mr. Nutley?

9        A.   Not in person, no.

10       Q.   But you've talked with him on the phone?

11       A.   No.

12       Q.   So you never talked with him or met him?

13       A.   No.

14       Q.   And, obviously, I don't want to get into

15   what you guys talked about, but have you ever

16   exchanged correspondence with him?

17       A.   Email, yes.

18   █  ███████████████████████████

19   ███████████████████████

20   ███████████████████████████

21   ████

22   █  █████████

23       Q.   I may have asked this before, I don't

24   remember, so I'm going to ask again:  Have you ever

25   submitted a claim in a class action before this one?

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

```
                                                  Page 32
 1      A.   No.
 2      Q.   Have you ever been a class representative
 3   in a class action?
 4      A.   No.
 5      Q.   Do you know whether you've ever received a
 6   notice in a class action?
 7      A.   Not that I know of.
 8                MS. McENTEE:  Okay.  What I would
 9   like to do is just take a break here and see if I
10   have anymore questions.
11                THE WITNESS:  Okay.
12                MS. McENTEE:  And then, at that
13   point, Mr. Victoria, if you have questions, you can
14   ask them.  But I'm just going to take a quick break.
15                MR. VICTORIA:  Okay.
16                (Short break.)
17                MS. McENTEE:  I don't have any
18   further questions.
19                And, Rich, just for the record, do
20   you have any questions for Brooke?
21                MR. VICTORIA:  No, not at this
22   time.
23                MS. McENTEE:  Okay.  Mr. Isaacson?
24                MR. ISAACSON:  I do have a few
25   questions.
```

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

```
                                              Page 33
 1                   CROSS EXAMINATION
 2    BY MR. ISAACSON:
 3        Q.   Brooke, you were asked about a list of,
 4    quote, approximately 618,281 persons, end quote,
 5    what does the "approximately" mean to you?
 6        A.   About average.
 7        Q.   Okay.  Does that suggest the class might be
 8    more than 618,281 persons?
 9        A.   Yes.
10        Q.   Or perhaps less than that many people?
11        A.   Yes.
12        Q.   Okay.  Did you ever see such a list?
13        A.   No.
14        Q.   It wasn't on-line, when you were looking
15    for information -- or you didn't see it on-line?
16        A.   No.
17        Q.   Let me clarify, you did not see such a list
18    on-line when you were looking for information?
19        A.   No.
20        Q.   Did you see drafts of your objection in the
21    case before it was filed?
22        A.   Yes.
23        Q.   Did I send you drafts of the objection
24    before I filed it?
25        A.   I believe so.
```

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 34

1      Q.    Did you read those drafts, at all?

2      A.    Yes.

3      Q.    Now, you object to the amount of the

4   settlement in this case; is that correct?

5      A.    Yes.

6      Q.    Are you aware that the named plaintiffs are

7   asking to be paid additional money?

8      A.    Could you repeat that?

9      Q.    Are you aware that the named plaintiffs,

10   the class representatives, who are entering the

11   settlement for the class, are asking for additional

12   money to that which other class members are getting?

13      A.    Not that I know of.

14      Q.    Okay.  Do you have any objection to the

15   attorneys' fees in the case?

16      A.    No.

17              MR. ISAACSON:  Okay.  I will ask

18   to seal the deposition on account of the fact that

19   the retainer is discussed, at least the portions of

20   the retainer agreement that are discussed, pursuant

21   to the protective order?

22              MS. McENTEE:  I agree that the

23   exhibit, itself, may be sealed.  But we did not get

24   into the financial particulars of what your hourly

25   rate was as part of the testimony, so I don't think

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 35

1    that that should be sealed.  I could have asked

2    those questions without the document, but I agree

3    that the document may be sealed as deemed

4    confidential.

5              MR. ISAACSON:  I request that the

6    portions of document discussing the retainer

7    agreement be sealed.

8              MS. McENTEE:  We'll just have to

9    address that with the court later.

10             MR. ISAACSON:  I have no further

11   questions.

12             MS. McENTEE:  Mr. Victoria, do you

13   have any questions?

14             MR. VICTORIA:  No.

15             MS. McENTEE:  And I don't have any

16   further questions either.  I think we're done.

17        (Discussion held off the record.)

18             MR. ISAACSON:  Back on the record.

19        Q.   (By Mr. Isaacson) I would like to ask,

20   again, I sent you copies of the objection -- drafts

21   of the objection, before it was filed.  I've sent

22   you the objection, itself.  Do you recognize this

23   document, which has got ECF document from the Pacer

24   file and 271 at the top?

25        A.   Yes.

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 36

1     Q.   And what is that document?

2     A.   This is -- well, this one is our objection.

3     Q.   The title is right there, if you need it.

4     A.   Oh, our settlement -- well, the settlement.

5     Q.   Well, it's not --

6     A.   Oh, objection.  Sorry.

7     Q.   Okay.  So this is the objection that I

8    filed on behalf of Kara and Brooke Bowes.  Can you

9    review the table of contents, please?

10    A.   (Witness complies.)

11    Q.   Does that refresh your memory as to whether

12   you objected to the attorneys' fees in this case?

13             MS. McENTEE:  Counsel, I'm going

14   to object.  You can refresh her memory, when there

15   is a answer "I don't know" or "I don't remember."

16   She specifically testified that she did not object

17   to attorneys' fees, so I don't think this is a

18   proper recollection --

19             THE WITNESS:  Whenever you said

20   that, you said, "Do you reject to the attorneys'

21   fees," I took it as I was rejecting to our attorney

22   fees.

23             MS. McENTEE:  I didn't ask you the

24   question, your counsel did.

25    Q.   (By Mr. Isaacson)  Does this refresh your

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 37

1   memory as to whether you objected to the attorneys'

2   fees in this case?

3       A.   Yes.

4       Q.   And what is your position on the attorneys'

5   fees in this case?

6       A.   I do not agree with them.  I object to

7   them.

8                 MS. McENTEE:  Why do you object to

9   the attorneys' -- I'm sorry.  Are you finished?  And

10  then I'll --

11                MR. ISAACSON:  Give me a couple

12  more questions.

13                MS. McENTEE:  Yeah.

14      Q.   (By Mr. Isaacson)  Your earlier answer was

15  not relating to the attorneys' fees to be paid to

16  the class counsel; is that what you said?

17      A.   I thought that we were talking about our

18  attorney fees, not --

19      Q.   When you say "our attorney fees," what does

20  "our attorney fees" mean?

21      A.   Not the -- between you and I, not between

22  the class.

23                MR. ISAACSON:  Thank you.  I have

24  to further questions.

25                FURTHER DIRECT EXAMINATION

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 38

1   BY MS. McENTEE:

2       Q.   Would you agree that when I asked you

3   earlier what you didn't like about the settlement,

4   you did not mention attorneys' fees; isn't that

5   true?

6       A.   Yes.

7       Q.   And when I asked you questions earlier

8   about what you didn't like about the settlement, you

9   didn't say anything about the named plaintiffs

10  getting more money; isn't that right?

11      A.   Correct.

12      Q.   You didn't remember that you had a problem

13  with those aspects of the settlement, until your

14  attorney reminded you here on the record; isn't that

15  right?

16      A.   Yes.

17               MS. McENTEE:  I don't have any

18  more questions.

19               Rich, anything?

20               MR. VICTORIA:  No, nothing here.

21               MS. McENTEE:  I think we are done

22  now.

23               MR. ISAACSON:  I think so.

24               MS. McENTEE:  I assume that you

25  will want the opportunity to review your deposition

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page  39

1   and make any changes, if there are mistakes;

2   correct?

3                     THE WITNESS:  Yes.

4                     MS. McENTEE:  We're going to send

5   that to your attorney.

6                     (Deposition concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 40

1                              JURAT

2

3            I, BROOKE BOWES, do hereby state under oath

4     that I have read the above and foregoing deposition

5     in its entirety and that the same is a full, true

6     and correct transcription of my testimony so given

7     at said time and place, except for the corrections

8     noted.

9

10

                           _____

11                              BROOKE BOWES

12

13

         Subscribed and sworn to before me, a Notary

14    Public in and for the State of Oklahoma, by said

15    witness, BROOKE BOWES, on this ____ day of _____,

16    20__.

17

18            _____

              Notary Public

19

20            My Commission Expires:_____

21

22

23

24

25

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 41

1                    ERRATA   SHEET

2    I, BROOKE BOWES, in Oklahoma City, Oklahoma,

3    Oklahoma County, Case No. 1:14-cv-02440-VEC, desire

4    to make the following corrections:

5

     PAGE    LINE    CORRECTION
6

7    _____   _____   _____

8    _____   _____   _____

9    _____   _____   _____

10   _____   _____   _____

11   _____   _____   _____

12   _____   _____   _____

13   _____   _____   _____

14   _____   _____   _____

15   _____   _____   _____

16   _____   _____   _____

17   _____   _____   _____

18   _____   _____   _____

19   _____   _____   _____

20   _____   _____   _____

21   _____   _____   _____

22   _____   _____   _____

23

24           _____
                           BROOKE BOWES
25

e9ae2740-9030-4009-ae80-52e2fd1a26de

Christina Melito, et. al. vs. American Eagle Outfitters
Deposition of Brooke Bowes

Page 42

1                  C E R T I F I C A T E

2

3

4    STATE OF OKLAHOMA )
                       ) SS:
5    COUNTY OF OKLAHOMA)

6

              I, Jill A. Resetar, a certified shorthand
7
     reporter within and for the State of Oklahoma,
8
     certify that BROOKE BOWES was by me sworn to testify
9
     the truth; that the deposition was taken by me in
10
     stenotype and thereafter transcribed by computer and
11
     is a true and correct transcript of the testimony of
12
     the witness; that the deposition was taken on JUNE
13
     14, 2017, at 9:07 a.m., at 914 N. Broadway, Suite
14
     500, Oklahoma City, Oklahoma; that I am not an
15
     attorney for or a relative of either party, or
16
     otherwise interested in this action.
17
              Witness my hand and seal of office on the
18
     20th day of June 2017.
19

20

21                             _____
                               Jill A. Resetar, CSR
22                             for the State of Oklahoma
                               CSR # 01734
23

24

25

Verbatim Reporting, LLC
Phone 405-232-8100 Fax 405-606-8767

e9ae2740-9030-4009-ae80-52e2fd1a26de